IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re:<br><br>**HILLSBOROUGH HOLDINGS CORPORATION,**<br><br>Debtor. | Chapter 11<br>Jointly Administered<br>Case No. 8:89-bk-9715<br>through 8:89-bk-9746<br>and 8:90-bk-11997 |
| In re:<br><br>**JW ALUMINUM COMPANY,**<br><br>Debtor. | Case No. 8:89-bk-9718 |
| **JW ALUMINUM COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**MICHAEL H. HOLLAND, MICHAEL MCKOWN, JOSEPH R. RESCHINI, and CARLO TARLEY,** as Trustees of the **UNITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN,**<br><br>and<br><br>**MICHAEL H. HOLLAND, MICHAEL MCKOWN, WILLIAM P. HOBGOOD, MARTY HUDSON, JOSEPH R. RESCHINI, CARL E. VANHORN, and GAIL R. WILENSKY,** as Trustees of the **UNITED MINE WORKERS OF AMERICA COMBINED BENEFIT FUND,**<br><br>Defendants. | Adversary Proceeding<br><br>No. _____ |

**<u>COMPLAINT</u>**

Pursuant to Rules 7001 and 9014 of the Federal Rules of Bankruptcy Procedure and § 105 of the Bankruptcy Code, 11 U.S.C. § 105, and based on prior orders and proceedings of this Court described herein, Plaintiff JW Aluminum Company ("JW Aluminum"), by and through its undersigned counsel, brings this Complaint (1) to obtain a declaration that particular debts and claims Defendants now assert against JW Aluminum were discharged in this bankruptcy case, and (2) to enforce the discharge injunction entered by this Court, and to obtain actual and punitive damages arising from Defendants' violation of the discharge injunction.  In support thereof, JW Aluminum respectfully states as follows:

## NATURE OF THE ACTION

1. On December 27, 1989, JW Aluminum filed its Voluntary Petition for Relief Under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.  On December 9, 1994, JW Aluminum, thirty-two affiliated Debtors, and various creditor proponents proposed the Amended Joint Plan of Reorganization (the "Consensual Plan").  The Court confirmed the Consensual Plan by entry of the Confirmation Order on March 2, 1995.

2. In 1992, during JW Aluminum's bankruptcy case, Congress passed the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), 26 U.S.C. § 9701 *et seq*.

3. Defendants allege that upon enactment of the Coal Act, JW Aluminum became a "related person" and, thereby, its liability to Defendants for Coal Act payments became fixed at that time; however, Defendants filed no claims against JW Aluminum during its bankruptcy case and took no steps to address this alleged liability.

4. JW Aluminum brings this action to determine that any debts and claims arising under the Coal Act that have been asserted against JW Aluminum have been discharged.  These debts and claims are the subject of pending litigation that Defendants commenced against JW

Aluminum in Civil Action No. 16-cv-1577 in the United States District Court for the District of Columbia (the "D.C. Litigation"). JW Aluminum seeks a judgment: (i) declaring that the claims Defendants have asserted in the D.C. Litigation have been discharged and (ii) enforcing this Court's discharge injunction and declaring that Defendants' actions in pursuing discharged claims against JW Aluminum violate 11 U.S.C. § 1141(d) and orders entered by this Court, and entitle JW Aluminum to recover actual and punitive damages.

## PARTIES

5. JW Aluminum is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 435 Old Mount Holly Road, Goose Creek, South Carolina 29445.

6. Upon information and belief, Defendants Michael H. Holland, Michael McKown, Joseph R. Reschini, and Carlo Tarley, as Trustees of the United Mine Workers of America 1992 Benefit Plan (collectively, the "1992 Plan Trustees"), are the trustees of the United Mine Workers of America 1992 Benefit Plan, and they are named as Defendants herein in that capacity. The 1992 Plan Trustees can be served at 2121 K Street, N.W., Washington, DC 20037.

7. Upon information and belief, Michael H. Holland, Michael McKown, William P. Hobgood, Marty Hudson, Joseph R. Reschini, Carl E. Vanhorn, and Gail R. Wilensky, as Trustees of the United Mine Workers of America Combined Benefit Fund (collectively, the "Combined Benefit Fund Trustees") are the trustees of the United Mine Workers of America Combined Benefit Fund, and they are named as Defendants herein in that capacity. The Combined Benefit Fund Trustees can be served at 2121 K Street, N.W., Washington, DC 20037. The Combined Benefit Fund Trustees and the 1992 Plan Trustees are collectively referred to herein as the "UMWA Trustees" or "Defendants."

**JURISDICTION AND VENUE**

8. This Court has original jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 because it arises under Title 11 or arises in or relates to JW Aluminum's Chapter 11 case filed in this Court, *In re JW Aluminum Company*, Case No. 8:89-bk-9718 (M.D. Fla. Tampa Division).

9. The Court has jurisdiction over this matter as a core proceeding under 28 U.S.C. § 157(b) because it involves matters concerning the administration of the estate and the prior discharge of debts and claims.

10. Venue is proper in this Court under 28 U.S.C. § 1409(a) because it arises under, arises in, and/or relates to JW Aluminum's Chapter 11 case filed in this Court.

**SUBSTANTIVE ALLEGATIONS**

11. Since its founding in 1980, JW Aluminum has been an aluminum products manufacturer.

12. For over thirty years, JW Aluminum has manufactured and sold high-quality aluminum products. Today, JW Aluminum specializes in the production of a wide range of top-quality flat rolled aluminum products for use by its customers in various industries including transportation (automotive and aeronautical), building and construction, and heating ventilation and air conditioning (HVAC). JW Aluminum employs approximately 710 individuals and operates four aluminum mills nationwide in Mt. Holly, South Carolina; Russellville, Arkansas; St. Louis, Missouri; and Williamsport, Pennsylvania.

**JW Aluminum Files Chapter 11 Bankruptcy in December 1989**

13. At the time of its bankruptcy filing in December 1989, Hillsborough Holdings Corporation ("Hillsborough") was the sole owner of JW Aluminum and several other companies, including Walter Industries, Inc. ("Old Walter Industries").

14. Old Walter Industries was, in December 1989, a holding company that owned many other companies in a variety of industries, including Jim Walter Resources, Inc. ("Jim Walter Resources"), a coal mine operator

15. On December 27, 1989, Hillsborough and thirty-one of its direct and indirect subsidiaries, including JW Aluminum, Old Walter Industries, and Jim Walter Resources, filed separate Chapter 11 petitions in this Court, and on December 3, 1990, an additional subsidiary filed its Chapter 11 petition (collectively, the "Hillsborough Proceedings"). During the Hillsborough Proceedings, Old Walter Industries was merged into Hillsborough, and the surviving entity was renamed Walter Industries, Inc. ("Walter Industries").[1]

16. The Consensual Plan was filed in each of the thirty-three bankruptcy proceedings on December 9, 1994. A true and correct copy of the Consensual Plan is attached hereto as Exhibit A.

17. The Court entered an order in each of the cases confirming the Consensual Plan (the "Confirmation Order") on March 2, 1995, and the Consensual Plan became effective on March 17, 1995 (the "Effective Date"). A true and correct copy of the Confirmation Order is attached hereto as Exhibit B.

18. The Confirmation Order contains several provisions that discharge JW Aluminum from any and all debts and claims, including all administrative claims. Specifically, the Confirmation Order provides that:

> [T]he issuance of this Order shall operate as a ***discharge*** effective as of the Effective Date, ***of any and all Debts*** (as such term is defined in Section 101(12) of the Bankruptcy Code) ***or Claims*** against one or more of the Debtors that arose at any time before the Effective Date . . . .

---

[1] After the bankruptcy proceedings were resolved through the Plan and Confirmation Order (as described in more detail herein), Walter Industries changed its name to Walter Energy, Inc. For ease of reference, this Complaint refers to this entity consistently as "Walter Industries."

(Confirmation Order [Ex. B] ¶ 18 (emphasis added).)[2]  The Confirmation Order further states:

> [O]n the Effective Date, all Assets shall vest in and be retained by the Debtors *free and clear of all Claims* . . . and Interests of the Holders of Claims and the Holders of Interests . . . .

(*Id.* ¶ 16 (emphasis added).)

19.     In addition to these discharge provisions, the Confirmation Order enjoins "all Persons who have held, hold or may hold a Demand, Debt or Claim . . . from . . . commencing . . . any suit . . . against any and all of the Released Parties [or] . . . proceeding in any manner that does not conform to or comply with the provisions of the [Consensual Plan] . . . ." (*Id.* ¶ 20.)

20.     In violation of the Confirmation Order, Defendants commenced the D.C. Litigation against JW Aluminum and two other similarly situated defendants, United States Pipe and Foundry Company, LLC ("U.S. Pipe") and JW Window Components, LLC ("JW Window"), asserting claims under the Coal Act.

### Congress Passes the Coal Act in October 1992
### Imposing Coal Act Liabilities on Coal Operators and "Related Persons"

21.     In October 1992, while JW Aluminum's bankruptcy proceeding was pending, Congress passed the Coal Act (codified as amended at 26 U.S.C. §§ 9701 to 9722).

22.     The Coal Act contains three statutory mechanisms relating to the provision of healthcare benefits for retired employees (and their dependents) of coal mine operators that signed collective bargaining agreements with the United Mine Workers of America, all of which are now being claimed by the UMWA Trustees in the D.C. Litigation:

---

[2] The Consensual Plan defines "Claims" consistently with the broad definition of "claim" in § 101(5) of the Bankruptcy Code.  (*See* Consensual Plan [Ex. A] ¶ 1.48.)

6

    (a)    First, the Coal Act created the United Mine Workers of America Combined Benefit Fund ("Combined Fund") to provide retiree health benefits to certain retired coal miners, and required each "assigned operator" to pay premiums to the Combined Fund. *See* 26 U.S.C. §§ 9702(a), 9704.

    (b)    Second, the Coal Act mandated that any "last signatory operator" provide retiree health benefits to certain retired coal miners under an individual employer plan ("IEP") for as long as such company remains in business. *See* 26 U.S.C. § 9711.

    (c)    Third, the Coal Act created the United Mine Workers of America 1992 Benefit Plan ("1992 Plan") to provide retiree health benefits for (i) retired coal miners who would be eligible for the Combined Fund, except that they retired after the cut-off date for participation in that Fund but before October 1, 1994, and (ii) coal miners who also retired by October 1, 1994, but whose former employers are no longer directly providing health benefits to them through an IEP required under 26 U.S.C. § 9711. *See* 26 U.S.C. § 9712.

23.    With respect to each of the coal operator obligations described above (payment of Combined Fund premiums, maintenance of IEPs, and payment of 1992 Plan premiums), the Coal Act also purports to impose the same obligations "jointly and severally" on the operator's "related persons."

24.    Under the Coal Act, "related persons" are defined to include companies that shared certain common ownership with a coal mining operator as of July 20, 1992. *See* 26 U.S.C. § 9701(c)(2).

25.    JW Aluminum is not and never has been a coal mine operator or otherwise engaged in the coal mining business.

26. The UMWA Trustees commenced the D.C. Litigation alleging that: (i) on or about April 1, 2016, Walter Industries stopped paying purported Coal Act obligations; (ii) JW Aluminum (along with U.S. Pipe and JW Window) is a "related person" to Walter Industries; and (iii) as a result, JW Aluminum (along with U.S. Pipe and JW Window) is jointly and severally liable for the satisfaction of Walter Industries' purported Coal Act liabilities.

27. If JW Aluminum is a "related person" and, thereby, jointly and severally responsible for Walter Industries' Coal Act liabilities, which is denied, that status or relationship, and the UMWA Trustees' first right to payments from JW Aluminum based on that status or relationship, arose upon the enactment of the Coal Act on October 24, 1992.

28. Nevertheless, the UMWA Trustees did not file an administrative claim[3] relating to these alleged "related person" Coal Act debts and obligations in this Chapter 11 proceeding, or take any other steps to have their claims preserved. Rather, all such claims or liabilities under the Coal Act have been discharged in and as a result of this Chapter 11 proceeding of JW Aluminum.

**Bankruptcy Proceedings Following the Coal Act's Enactment**

29. During the Hillsborough Proceedings, the UMWA Trustees appeared and asserted claims in the Jim Walter Resources bankruptcy case, Case No. 89-9738-BKC-8P1.

30. The UMWA Trustees did not assert a proof of claim, an administrative claim, or any other claim against JW Aluminum for any "related person" obligations or other liabilities under the Coal Act.

---

[3] "Administrative Claims" are broadly defined by the Consensual Plan to include, among other things, "all of the costs and expenses of administration of the Chapter 11 Cases . . . , the actual and necessary costs and expenses of . . . operating the business of each of the Debtors . . . , [and] any indebtedness or obligations incurred or assumed by any of the Debtors . . . ." (Consensual Plan [Ex. A] ¶ 1.18.)

8

**The Hillsborough Debtors Obtain Plan Confirmation, Discharge, and Injunction**

31. On December 9, 1994, the Debtors and various creditors submitted their Consensual Plan, which was subsequently modified on March 1, 1995.

32. The Consensual Plan provides that only certain retiree health benefit obligations will be addressed and performed on and after its Effective Date by only two specific debtors—Walter Industries and Jim Walter Computer Services, Inc. ("Computer Services")—and sets forth a plan for those two debtors to meet those obligations, as follows:

> 5.4 <u>Funding of Retiree Health Benefits</u>. On the Effective Date, Walter Industries and Computer Services shall set aside, in trust(s), funds (not to exceed $7 million in the aggregate) sufficient to provide reasonable assurance (on an actuarial basis in the judgment of the Boards of Directors of Walter Industries and Computer Services) of the continued funding of medical benefits, under the post-retirement medical benefit plans of Walter Industries and Computer Services from time to time in effect, upon the retirement of current employees whose benefits in such plan have vested and to retired employees of Walter Industries and Computer Services following the dissolution of Walter Industries and/or Computer Services, divestiture of Walter Industries' operating subsidiaries or other event which would render Walter Industries and/or Computer Services unable to continue the current funding of such benefits.

(Consensual Plan [Ex. A] ¶ 5.4)

33. The Consensual Plan does not provide for the payment of any retiree health benefits or of any Coal Act liabilities by JW Aluminum. Indeed, the Consensual Plan does not provide for the post-confirmation continuation of any obligations or liabilities on the part of JW Aluminum for any retiree health benefits or for any payments or other debts or obligations under the Coal Act.

34. Instead, the Consensual Plan provides that confirmation of the Consensual Plan operates to discharge all of JW Aluminum's debts, as follows:

> 12.2 <u>Discharge</u>. The issuance of the Confirmation Order shall (a) operate as a discharge, pursuant to Section 1141(d)(1) of the Code, effective as of the Effective Date, of any and all debts (as such term is defined in Section 101(12) of the Code) of or ***Claims against one or more of the Debtors that arose at any time***

9

***before the Effective Date, including, but not limited to, all principal and all interest, whether accrued before, on or after the Filing Date***.  Without limiting the generality of the foregoing, on the Effective Date, the Debtors shall be discharged from any debt that arose before the Effective Date, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Code, to the full extent permitted by Section 1141(d)(1)(A) of the Code.  Nothing in the Consensual Plan shall be deemed to waive, limit or restrict in any way the discharge granted upon Confirmation of the Consensual Plan pursuant to Section 1141 of the Code and effective as of the Effective Date.

(Consensual Plan [Ex. A] ¶ 12.2 (emphasis added).)

35. The Consensual Plan further provides for a permanent injunction prohibiting any creditor or claimant from pursuing collection of the discharged debts, as follows:

12.3    Injunction.  In order to preserve and promote the settlements contemplated by and provided for in the Consensual Plan, effective on the Effective Date, all Persons who have held, hold or may hold a Demand, debt or Claim, or who have held, hold or may hold Interests, shall be permanently enjoined, to the fullest extent permitted by law, from taking any of the following actions against or affecting the Released Parties [i.e., the Debtors and certain of their creditors] or the Assets (or assets or other property) of the Released Parties with respect to such Claims, Demands or Interests (other than actions brought to enforce any rights or obligations under the Consensual Plan or any of the Reorganization Documents or appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Released Parties or the Assets (or assets or other property) of the Released Parties or any direct or indirect successor in interest to any of the Released Parties, or any Assets (or assets or other property) of any such successor; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Released Parties or the Assets (or assets or other property) of the Released Parties or any direct or indirect successor in interest to any of the Released Parties or any Assets (or assets or other property) of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the Assets (or assets or other property) of the Released Parties or any direct or indirect successor in interest to any of the Released Parties, or any Assets (or assets or other property) of any such transferee or successor other than as contemplated by the Consensual Plan or any of the Reorganization Documents; (iv) asserting any set-off, right of subrogation or recoupment of any kind, directly or indirectly against any obligation due the Released Parties or the Assets (or assets or other property) of the Released Parties, or any direct or indirect transferee of any Assets (or assets or other property) of, or successor in interest to, any of the Released Parties; and (v) proceeding in any manner in any place whatsoever that does not conform to or

comply with the provisions of the Consensual Plan or any of the Reorganization Documents.

(Consensual Plan [Ex. A] ¶ 12.3.)[4]

36. The UMWA Trustees did not object to the terms of the Consensual Plan or to the confirmation by this Court of the Consensual Plan.

37. On March 2, 1995, this Court entered its Confirmation Order.

38. The Confirmation Order not only confirms the Consensual Plan and all of its terms including its discharge and injunctive provisions, it also includes a specific provision ordering the discharge of all debts and claims against JW Aluminum, as follows (the "Discharge Order"):

> 18. Except as otherwise expressly provided in the Modified Consensual Plan or this Order, pursuant to Article XII, Section 12.3 of the Modified Consensual Plan and Section 1141(d) of the Bankruptcy Code, ***the issuance of this Order shall operate as a discharge effective as of the Effective Date, of any and all Debts*** (as such term is defined in Section 101(12) of the Bankruptcy Code) ***or Claims against one or more of the Debtors that arose at any time before the Effective Date*** and from any Debt or Claim of a kind specified in Sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, including, without limitation, all principal of, and interest on, all indebtedness, whether accrued before, on or after the Filing Date. The discharge of the Debtors will be effective as to each Claim, regardless of whether a proof of Claim was filed or deemed filed, whether the Claim is an Allowed Claim or whether the Holder thereof voted to accept or reject the Consensual Plan. ***On the Effective Date, the Holder of every discharged Debt and Claim will be permanently enjoined from asserting against any and all of the Debtors or any of their respective assets, any other or further Claim based upon any law, rule or regulation or any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, other than as provided in the Modified Consensual Plan***.

(Confirmation Order [Ex. B ] ¶ 18 (emphasis added).)

---

[4] "Released Parties" include "the Debtors," which include JW Aluminum. (*See* Consensual Plan [Ex. A] ¶¶ 1.67, 1.116, 1.182, 6.1.)

11

39. Under the Consensual Plan and the Confirmation Order, including the Discharge Order, JW Aluminum's debts and obligations were discharged under 11 U.S.C. § 1141(d).

40. Following entry of the Confirmation Order, the Consensual Plan was consummated and became effective, and on September 22, 1998, JW Aluminum filed its Certificate of Substantial Consummation.

41. On November 30, 1998, the Court entered its Final Decree in JW Aluminum's bankruptcy case, and the case was closed.

**Subsequent Events Giving Rise to this Action**

42. In 2003, after the conclusion of JW Aluminum's bankruptcy case, Walter Industries sold the stock of JW Aluminum to an independent third party. Since then, JW Aluminum has had no affiliation with Walter Industries or Jim Walter Resources.

43. On August 3, 2016, the UMWA Trustees initiated the D.C. Litigation against U.S. Pipe, alleging that it is a "related person" to Walter Industries and is thereby responsible for Walter Industries' Coal Act liabilities (a status that, if true, gave the UMWA Trustees a right to payment from U.S. Pipe when the Coal Act became effective) and further alleged that because Walter Industries ceased honoring its Coal Act obligations in April 2016, U.S. Pipe was obligated to begin fulfilling those obligations.

44. On March 27, 2017, the UMWA Trustees filed an amended complaint in the D.C. Litigation to name JW Aluminum and JW Window as additional defendants in the action. A true and correct copy the UMWA Trustees' amended complaint filed in the D.C. Litigation is attached hereto at Exhibit C.

45. JW Aluminum denies the UMWA Trustees' allegations contained in their amended complaint in the D.C. Litigation, including that it is liable in any amount to the Combined Benefit Fund Trustees or the 1992 Plan Trustees.

## COUNT I – DECLARATION THAT JW ALUMINUM'S DEBTS FOR COAL ACT CLAIMS WERE DISCHARGED

46. JW Aluminum repeats, re-alleges, and incorporates by reference, as if fully set forth herein, the allegations of each of the preceding paragraphs set forth above.

47. In the D.C. Litigation, the UMWA Trustees allege that JW Aluminum has been, and continues to be, jointly and severally liable for certain debts, claims, and obligations under the Coal Act because it is a "related person" to Walter Industries, which is no longer fulfilling its obligations under the Coal Act. These alleged liabilities include: (a) the provision of retiree health care benefits through an IEP; (b) the payment of premiums to the 1992 Plan; and (c) the payment of premiums to the Combined Fund.

48. The alleged Coal Act liabilities that form the basis of the UMWA Trustees' claims in the D.C. Litigation are "debts" and "claims" that have been discharged pursuant to, among other things, the Consensual Plan, the Confirmation Order, the Discharge Order, and 11 U.S.C. § 1141(d).

49. JW Aluminum is entitled to the entry of a final judgment pursuant to 11 U.S.C. § 105 and § 1141(d) declaring that the UMWA Trustees' Coal Act claims against JW Aluminum were and are discharged.

## COUNT II – DECLARATION THAT UMWA TRUSTEES VIOLATED JW ALUMINUM'S DISCHARGE

50. JW Aluminum repeats, re-alleges, and incorporates by reference, as if fully set forth herein, the allegations of each of the preceding paragraphs set forth above.

51. JW Aluminum is entitled to the entry of a final judgment pursuant to 11 U.S.C. § 105 and § 1141(d) enforcing this Court's permanent injunction and declaring that the UMWA Trustees violated the Consensual Plan, the Discharge Order, and 11 U.S.C. § 1141(d).

52. As a result of the UMWA Trustees' violations of the Consensual Plan, the Discharge Order, and 11 U.S.C. § 1141(d), JW Aluminum has incurred loss and damage, and is continuing to incur loss and damage, including, but not limited to, the expense associated with responding to the D.C. Litigation and the expense of initiating this adversary proceeding.

53. As a result of Defendants' commencement and prosecution of the D.C. Litigation, JW Aluminum has incurred costs and expenses, including, but not limited to, attorney's fees and other professional fees to defend itself.

54. JW Aluminum is entitled to recover its actual damages as well as punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, JW Aluminum respectfully requests that the Court grant it the following relief:

1. Enter a declaratory judgment that the UMWA Trustees' Coal Act claims against JW Aluminum were and are discharged;

2. Enter a declaratory judgment that the UMWA Trustees violated the Consensual Plan, the Discharge Order, and 11 U.S.C. § 1141(d);

3. Enter an order enforcing this Court's discharge injunction and awarding JW Aluminum damages in an amount proven by JW Aluminum to have been suffered, including an appropriate award of punitive damages;

4. Award JW Aluminum its attorneys' fees, costs, and expenses; and

5. Grant JW Aluminum such other relief as may be necessary and appropriate.

DATED: June 15, 2017.

/s/ *Scott A. Stichter*
Scott A. Stichter (FBN 0710679)
STICHTER, RIEDEL, BLAIN & POSTLER, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida  33602
Phone: (813) 229-0144
Fax: (813) 229-1811
Email:  sstichter@srbp.com

and

Mark M. Maloney (Ga. Bar No. 468104)
Kevin J. O'Brien (Ga. Bar No. 714849)
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 572-4600
Fax: (404) 572-5100
Email:  mmaloney@kslaw.com
           kobrien@kslaw.com

*Attorneys for Plaintiff JW Aluminum Company*