**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| In re:<br><br>HILLSBOROUGH HOLDINGS CORPORATION,<br><br>    Debtor. | Chapter 11<br><br>Case Nos. 8:89-bk-9715 through 8:89-bk-9746 and 8:90-bk-11997<br><br>(Jointly Administered) |
| JW ALUMINUM COMPANY,<br><br>    Debtor. | Case No. 8:89-bk-9718 |
| JW ALUMINUM COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL H. HOLLAND, MICHAEL MCKOWN, JOSEPH R. RESCHINI AND CARLO TARLEY, as Trustees of the UNITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN,<br><br>and<br><br>MICHAEL H. HOLLAND, MICHAEL MCKOWN, WILLIAM P. HOBGOOD, MARTY HUDSON, JOSEPH R. RESCHINI, CARL E. VANHORN, and GAIL R. WILENSKY, as Trustees of the UNITED MINE WORKERS OF AMERICA COMBINED BENEFIT FUND,<br><br>    Defendants. | Adversary Proceeding No. 8:17-ap-00480-KRM |

**DEFENDANTS' AMENDED MOTION TO DISMISS
AND MEMORANDUM OF LAW
(Amended Only to Add Negative Notice Legend)**

**NOTICE OF OPPORTUNITY TO OBJECT
AND REQUEST FOR HEARING**

Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 14 days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.

If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at 801 N. Florida Avenue, Suite 555, Tampa, Florida 33602 and serve a copy on the movant's attorney, Stephanie C. Lieb, Esq., Trenam Law, 101 E Kennedy Boulevard, Suite 2700, Tampa, FL 33602, and any other appropriate persons within the time allowed.  If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.

If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

## PRELIMINARY STATEMENT

1.      The Trustees of the United Mine Workers of America 1992 Benefit Plan and the Trustees of the United Mine Workers of America Combined Benefit Fund (the "Trustees"), who are Defendants in this action, filed a lawsuit on August 3, 2016, in the United States District Court for the District of Columbia against an entity named United States Pipe and Foundry Company, LLC.  On March 27, 2017, the Trustees amended their complaint to add two defendants to the lawsuit:  JW Aluminum Company ("Plaintiff" in this action) and JW Window Components, LLC.  The Trustees' amended complaint alleges that Plaintiff is subject to the Coal Act, a federal statute codified in the Internal Revenue Code that provides for the health care of certain retired coal miners and their dependents.  *Holland, et al. v. United States Pipe and Foundry Co., et al.*, Civil Action No. 16-01577 (D.D.C.).

2.      The Trustees allege that Plaintiff is subject to the Coal Act because it is a "related person" to Walter Industries, which in turn is a "1988 Agreement Operator" and a "last signatory operator," as each of those terms is defined in Section 9701 of the Coal Act, 26 U.S.C. § 9701. All "related persons" of Walter Industries are jointly and severally responsible for compliance with the Coal Act.  26 U.S.C. §§ 9704(a), 9711(c), 9712(d)(4).

3.      Walter Industries complied with its Coal Act statutory obligations until April 2016.  It maintained a single-employer health care plan to provide health care for its eligible retired miners and their dependents, as required under Section 9711.  It posted security to the 1992 Benefit Plan and paid premiums to the Combined Benefit Fund, as required under Sections 9704 and 9712 of the Coal Act.

4.      Walter Industries did all of this even though it had been a Debtor in these jointly-administered cases, and had the benefit of the same 1995 Confirmation Order that Plaintiff raises

as a shield today.  Walter Industries never once claimed in 21 years that the Confirmation Order, or its discharge in these cases, affected in any way its obligations to comply with the Coal Act.

5.    But Walter Industries collapsed in 2015, ceased complying with the Coal Act in 2016, and is now in Chapter 7 liquidation in Alabama.

6.    Defendants, as Trustees of the affected Coal Act benefit plans, now look to the related persons of Walter Industries for compliance with the Coal Act, by asking for the creation of a single-employer plan to care for Coal Act-eligible retirees and their spouses and dependents, and for payment of premiums arising since Walter Industries stopped performing these obligations – that is, periods beginning on April 1, 2016.

7.    Plaintiff, however, has refused to comply.  After the Trustees sued in Washington, D.C. to compel it to do so, Plaintiff came to this Court, more than 21 years after the conclusion of these bankruptcy cases, seeking a ruling that a decades-old discharge that never stood in the way of Walter Industries' compliance somehow exempts Plaintiff from complying with its current statutory obligation to provide health care and pay premiums that were assessed in 2016.

8.    The Court should dismiss this adversary proceeding.  Three circuit courts of appeals have held that premium obligations under the Coal Act are taxes – meaning that they arise periodically, as they are incurred, with each period's obligation constituting a separate debt. None of the premium obligations that the Trustees seek to enforce in the D.C. Litigation existed at the time of the order confirming the Plan in this case.  Meanwhile, the Coal Act's requirement that Plaintiff establish and maintain a single-employer retiree health plan is an ongoing statutory obligation, not a "claim," and is not subject to discharge.  Put simply, Walter Industries had it right all along:  this bankruptcy had no effect on these Debtors' obligations to comply with the Coal Act.

2

# ALLEGATIONS[1]

## A.      The Related-Party Bankruptcies and the 1995 Discharge

9.      On December 27, 1989, Hillsborough Holdings Corporation and certain of its subsidiaries, including Plaintiff and Walter Industries[2] (together, the "Debtors"), filed Chapter 11 petitions in this Court.  Complaint ¶¶ 13, 15.

10.      In October 1992, while the Debtors' bankruptcy cases were pending, Congress passed the Coal Industry Retiree Health Benefit Act of 1992, Pub. L. No. 102-486, 106 Stat. 2776, 3036-56, *codified in relevant part at* 26 U.S.C. §§ 9701-9722 (the "Coal Act"), which imposed certain obligations regarding the health care of miners who retired by September 30, 1994, on coal operators and any other entities that were under common ownership with those operators as of July 20, 1992 (referred to as "related persons").  Complaint ¶¶ 21, 24; 26 U.S.C. § 9701(c)(2).

11.      On March 2, 1995, this Court entered its Confirmation Order confirming the Chapter 11 Plan, which discharged claims against Plaintiff, Walter Industries, and their affiliated Debtors under Bankruptcy Code Section 1141(d).  Complaint Ex. B.  The Confirmation Order stated that "pursuant to Article XII, Section 12.3 of the Modified Consensual Plan and Section 1141(d) of the Bankruptcy Code, the issuance of this Order shall operate as a discharge effective as of the Effective Date, of any and all Debts . . . or Claims against one or more of the Debtors

---

[1] All facts cited in this Motion that are not alleged in the Complaint itself appear either in the exhibits attached to the complaint or are matters of public record.  *See, e.g.*, *Halmos v. Bombardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) ("The district court's determination did not exceed the permissible scope of a 12(b)(6) motion to dismiss – the complaint, attachments to the complaint, and matters of public record.").

[2] Capitalized terms not defined herein have the meanings given in the Complaint.  Walter Industries, Inc., changed its name to Walter Energy, Inc., after the above-captioned bankruptcy cases concluded. Consistent with the Complaint, this Motion uses the term "Walter Industries" uniformly to refer to this entity.  Complaint ¶ 15, n.1.

*that arose at any time before the Effective Date . . . .*" Complaint ¶¶ 18, 38 (quoting Confirmation Order ¶ 18) (emphasis added).

12.     The Confirmation Order further provided that "on the Effective Date, all Assets shall vest in and be retained by the Debtors free and clear of all Claims . . . and Interests of the Holders of Claims and the Holders of Interests . . . ." *Id.* ¶ 18 (quoting Confirmation Order ¶ 16). "Claim" was defined under the Plan as "a claim against one or more of the Debtors within the meaning of Section 101(5) of the [Bankruptcy] Code," excluding postpetition commercial payables. Plan, Complaint Ex. A § 1.48. While the term "debt" is not defined in the Plan, the Bankruptcy Code defines it as "liability on a claim." 11 U.S.C. § 101(12).[3]

13.     The Plan similarly provided that "The issuance of the Confirmation Order shall (a) operate as a discharge . . . effective as of the Effective Date, of any and all debts (as such term is defined in Section 101(12) of the [Bankruptcy] Code) of or Claims against one or more of the Debtors *that arose at any time before the Effective Date . . . .* Without limiting the generality of the foregoing, on the Effective Date, the Debtors shall be discharged from any debt *that arose before the Effective Date . . . .*" Complaint ¶ 34 (quoting Plan § 12.2) (emphasis added).

14.     The Plan further enjoined holders of any "Demand, debt or Claim, or . . . Interests" from taking enforcement action against the Debtors with respect to such Demand, debt, Claim or Interest. Complaint ¶ 35 (quoting Plan § 12.3).[4]

---

[3] An "Interest" was defined in the Plan as "the rights arising out of any equity securities of any of the Debtors . . . ." Plan, Complaint Ex. A § 1.112.

[4] A "Demand" was defined as "a demand for or right to payment, present or future, that was not a Claim during the proceedings leading to the Confirmation of the Consensual Plan, arising out of the same or similar conduct or events that gave rise to the Settlement Claims." Plan, Complaint Ex. A § 1.70. The "Settlement Claims" were defined with reference to the "Second Amended and Restated Veil Piercing Settlement Agreement." Id. §§ 1.210, 1.195.

4

15.     Neither the Plan nor the Confirmation Order expressly addressed any of the Debtors' obligations under the Coal Act.  Complaint ¶ 33; *id.* Exs. A, B.

16.     Post-emergence, Plaintiff remained under common ownership with Walter Industries until 2003.   Complaint ¶ 42.   During this time, Walter Industries fulfilled its obligations under the Coal Act by maintaining a single-employer plan for eligible retirees, posting required security for the benefit of the 1992 Benefit Plan and paying premiums to the Combined Benefit Fund; indeed, Walter Industries continued fulfilling these obligations until after it had entered bankruptcy for the second time in 2015.  *See, e.g.*, *In re Walter Energy, Inc.*, 542 B.R. 859, 868 (Bankr. N.D. Ala. 2015).

**B.     Walter's Second Bankruptcy and the D.C. Litigation**

17.     On July 15, 2015, Walter Industries again filed for Chapter 11 protection in the U.S. Bankruptcy Court for the Northern District of Alabama.  Case No. 15-02741 (Bankr. N.D. Ala.) (the "Walter Docket").   Walter Industries expressly included its Coal Act obligations among its liabilities in its bankruptcy filings.  *See, e.g.*, Declaration of William G. Harvey in Support of First Day Motions ¶¶ 83-84 (Walter Docket No. 3) ("The Debtors are also obligated by statute to provide benefits to certain retirees who retired before October 1, 1994 under the [Coal Act]. . . .  The Coal Act provides for the assignment of beneficiaries to a former employer, and that their former signatory employer or related companies pay a premium for each such beneficiary and dependent . . . .").

18.     Walter Industries ultimately proposed to sell the majority of its assets on a going-concern basis under Section 363 of the Bankruptcy Code, and sought to terminate its Coal Act liabilities under Bankruptcy Code Section 1114 in order to facilitate the sale.  *See generally Walter Energy*, 542 B.R. 859.  The Alabama Bankruptcy Court found that it had the authority to

relieve Walter Industries of its Coal Act obligations under this provision and granted the requested relief on December 28, 2015. *Id.*[5] The Alabama Bankruptcy Court's order did not purport to extend this relief to any of Walter Industries' non-debtor former affiliates, such as Plaintiff. *Id.*

19.     Walter Industries complied with the Coal Act until April 2016, when it ceased paying premiums to the Combined Benefit Fund and terminated coverage under its individual employer retiree health plan.  Complaint Ex. C ¶¶ 15, 23, 29.  Walter Industries' bankruptcy case was converted to Chapter 7 on February 21, 2017.  (Walter Docket No. 2910).

20.     As a result of Walter Industries' termination of its individual employer plan, in April 2016 the 1992 Benefit Plan immediately began providing health coverage to 439 eligible retirees and dependents, and Walter Industries and its related persons began to owe monthly per beneficiary premiums to the 1992 Benefit Plan under Section 9712 of the Coal Act for each month in which those beneficiaries received health coverage through the 1992 Benefit Plan.  The 1992 Benefit Plan's premium rate assessed for the calendar year 2016 was $702.08 per beneficiary per month.  Complaint Ex. C ¶¶ 23-27.  1992 Benefit Plan monthly per beneficiary premiums continue to accrue.

21.     Walter Industries also stopped paying its Combined Fund premiums in April 2016.  It and its related persons owe unpaid monthly installments of the annual premium obligation to the Combined Benefit Fund for the year beginning on October 25, 2015 (the total annual premium, which was paid in part by Walter Industries, was $142,549.92; each monthly installment is $11,879.16) as well as the annual premium incurred for the year beginning October

---

[5] The Combined Benefit Fund and the 1992 Benefit Plan have challenged the Bankruptcy Court's authority to grant this relief under Bankruptcy Code Section 1114.  The matter is on appeal before the 11th Circuit Court of Appeals pending a decision.  Case No. 16-13483 (11th Cir.).

25, 2016.  Complaint Ex. C ¶ 29.

22.     On August 3, 2016, the Trustees brought the D.C. Litigation against United States Pipe and Foundry Company, LLC, seeking payment of unpaid 1992 Benefit Plan and Combined Benefit Fund premiums (the "Unpaid Premium Claims") and the establishment of a health plan to cover Walter Industries' assigned retirees (together with the Unpaid Premium Claims, the "Coal Act Claims").   Civil Action No. 16-01577 (D.D.C.) (the "D.C. Docket"); Complaint Ex. C.   On March 27, 2017, the Trustees amended their complaint to add two defendants, including Plaintiff, to the D.C. Litigation.  *Id.*  The Trustees allege that Plaintiff is a "related person" to Walter Industries, as that term is defined in the Coal Act, and is jointly and severally liable for Walter Industries' obligations thereunder.   Complaint ¶¶ 24, 26; Complaint Ex. C ¶¶ 16, 20, 24, 25, 30.

23.     Plaintiff has denied any liability under the Coal Act in the D.C. Litigation.  *See generally* JW Aluminum Company's Answer to Plaintiffs' Amended Complaint (D.C. Docket No. 28).   The D.C. District Court has entered a scheduling order under which discovery in the D.C. Litigation is to be completed by November 13, 2017, and dispositive motions are due February 12, 2018.  (D.C. Docket No. 15).

## ARGUMENT

24.     The facts alleged in the Complaint, taken as true, do not demonstrate that the Trustees have violated the Debtors' bankruptcy discharge because the Coal Act Claims that the Trustees seek to enforce in the D.C. Litigation were never subject to that discharge. Accordingly, both of the counts charged in the Complaint should be dismissed for failure to state a claim on which relief can be granted.  F.R.C.P. 12(b)(6); *K.A. v. Waters*, 448 Fed. App'x. 7, 9 (11th Cir. 2011).

**A.     Plaintiff's Current Coal Act Premium Obligations Were Not Subject to Its Discharge**

> **i.     Plaintiff's discharge applied only to claims that had arisen by the time of the discharge.**

25.     Plaintiff cites to provisions of its Chapter 11 Plan and this Court's Confirmation Order that it claims effected a discharge of the Unpaid Premium Claims the Trustees have asserted in the D.C. Litigation.  However, both the text of the Bankruptcy Code and the express terms of those provisions make clear that the discharge can only have affected claims that had arisen as of the discharge date of March 2, 1995.

26.     The discharge provision of Chapter 11 of the Bankruptcy Code is clear in this limitation:  "Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan . . . discharges the debtor from any debt *that arose before the date of such confirmation* . . . ."  11 U.S.C. § 1141(d)(1)(A) (emphasis added). Plaintiff has not alleged that the Plan or Confirmation Order expands on this Bankruptcy Code provision by providing for the discharge of post-confirmation or post-Effective Date claims – much less that an expansion of this nature would be legally permissible.

27.     The discharge provisions of the Plan and Confirmation Order themselves track the

language of Section 1141(d)(1).  Complaint ¶ 34 ("The issuance of the Confirmation Order shall (a) operate as a discharge, pursuant to Section 1141(d)(1) of the Code, effective as of the Effective Date, of any and all debts (as such term is defined in Section 101(2) of the Code) of or *Claims against one or more of the Debtors that arose at any time before the Effective Date* . . . .") (emphasis original) (quoting Plan § 12.2); *id.* ¶ 38 ("Except as otherwise provided in the Modified Consensual Plan or this Order . . . *the issuance of this Order shall operate as a discharge effective as of the Effective Date, of any and all Debts . . . or Claims against one or more of the Debtors that arose at any time before the Effective Date* . . . .") (emphasis original) (quoting Confirmation Order ¶ 18).[6]

28.     Under the plain language of these provisions, a claim would have to have arisen, at the latest, by the Plan's Effective Date in order to have been implicated by Plaintiff's bankruptcy discharge.  As discussed below, the Unpaid Premium Claims are tax claims that arose decades later.  Accordingly, the Unpaid Premium Claims were not subject to the discharge.

    **ii.     The Trustees' Unpaid Premium Claims arose after the discharge.**

29.     The Coal Act's plain statutory language makes clear that Coal Act premium obligations arise on an annual basis.  This text alone disposes of Plaintiff's claim that the Trustees' 2016 Unpaid Premium Claims were subject to Plaintiff's 1995 discharge.  *U.S. v. Ron Pair Enters.*, 489 U.S. 235, 240-241 (1989) ("[A]s long as the statutory scheme is coherent and

---

[6] Plaintiff also cites in paragraph 18 of the Complaint to the provision of the Confirmation Order stating that "on the Effective Date, all Assets shall vest in and be retained by the Debtors free and clear of all Claims . . . and Interests of the Holders of Claims and the Holders of Interests . . . ."  Confirmation Order, Complaint Ex. B ¶ 16.  The Trustees have not asserted any claim against or interest in any of Plaintiff's assets, so this provision is not relevant.  *See generally* Complaint Ex. C.  Moreover, even if this provision were to be interpreted as barring claims against Plaintiff itself, it would not implicate claims that arose after the Effective Date.  *See*, *e.g.*, *Pension Benefit Guar. Corp. v. Oneida Ltd.*, 562 F.3d 154, 157 (2d Cir. 2009) ("No matter how broadly the term 'claim' is construed, it cannot extend to a right to payment that does not yet exist under federal law.").

9

consistent, there generally is no need for a court to inquire beyond the plain language of the statute. . . . [W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms.") (internal citation and quotation omitted).

      30.     With respect to Combined Benefit Fund obligations, the Coal Act provides:

> Each assigned operator shall pay to the Combined Fund *for each plan year* beginning on or after February 1, 1993, *an annual premium* equal to the sum of the following three premiums –
>
> (1) the health benefit premium determined under subsection (b) *for such plan year*, plus
>
> (2) the death benefit premium determined under subsection (c) *for such plan year*, plus
>
> (3) the unassigned beneficiaries premium determined under subsection (d) *for such plan year*.
>
> Any related person with respect to an assigned operator shall be jointly and severally liable for any premium required to be paid by such operator.[7]

26 U.S.C. § 9704(a) (emphasis added); *see also* 26 U.S.C. § 9704(g)(1) ("The annual premium under subsection (a) for any plan year shall be payable in 12 equal monthly installments, due on the twenty-fifth day of each calendar month in the plan year.").

      31.     With respect to 1992 Benefit Plan obligations, the Coal Act provides:

> All [ ] last signatory operators shall be responsible for financing the benefits [provided to eligible beneficiaries by the 1992 Benefit Plan] by meeting the following requirements in accordance with the contribution requirements established in the 1992 UMWA Benefit Plan:
>
> (A) The payment of a *monthly per beneficiary premium* by each [ ] last signatory operator for each eligible beneficiary of such operator . . . who is receiving

---

[7] The Coal Act defines a "related person" according to corporate family relationships in existence as of July 20, 1992.  26 U.S.C. § 9701(c)(2); *see also* 26 U.S.C. §§ 52, 1563 (defining requisite common ownership thresholds giving rise to "related person" status).  The Trustees have concluded that Plaintiff is a related person to Walter Industries under these statutes as a result of Plaintiff's common ownership with Walter Industries on that date.  Complaint ¶¶ 15, 24, 26.  To the extent Plaintiff challenges this conclusion, the D.C. Litigation is the appropriate forum for resolving the dispute, and it need not bear on the dispositive legal issue before this Court – whether Plaintiff's discharge could have applied to the Coal Act Claims.

benefits under the 1992 UMWA Benefit Plan . . . .

26 U.S.C. § 9712(d)(1) (emphasis added).  This section further requires that the 1992 Benefit

Plan make:

>  (A) annual adjustments of the per beneficiary premium to cover changes in the
>  cost of providing benefits to eligible beneficiaries, and
>
>  (B) adjustments as necessary to the annual backstop premium to reflect changes in
>  the cost of providing benefits to eligible beneficiaries for whom per beneficiary
>  premiums are not made.

26 U.S.C. § 9712(d)(2).[8]

32.    Each of the Unpaid Premium Claims the Trustees have asserted in the D.C.

Litigation is on account of monthly or annual premium payment obligations that arose in 2015

and 2016 – decades after Plaintiff's 1995 bankruptcy discharge.  Complaint Ex. C ¶¶ 22-24, 28-

30.

33.    The periodically arising nature of Coal Act premium obligations evident from the

Coal Act's statutory text has been recognized by at least three circuit courts of appeals, each of

which concluded that Coal Act premiums are taxes that are incurred on an ongoing basis.  *LTV

Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 498 (2d Cir. 1995) ("In sum, we

agree with the district court that the Coal Act obligations are appropriately described as 'taxes'

. . . .  As a result, the portion of LTV's Coal Act liability accruing during the pendency of its

bankruptcy is entitled to treatment as an administrative expense of the estate pursuant to section

507(a)(1).  The remainder of LTV's obligations was not dischargeable in bankruptcy and is an

obligation of the reorganized LTV.") (citations omitted); *UMWA 1992 Benefit Plan ex rel.

Holland v. Rushton (In re Sunnyside Coal Co.)*, 146 F.3d 1273, 1280 (10th Cir. 1998) ("We

---

[8] This section also provides that a "last signatory operator . . . and any related person to any such operator,
shall be jointly and severally liable with such operator for any amount required to be paid by such
operator under this section."  26 U.S.C. § 9712(d)(4).

therefore hold Coal Act premiums are taxes incurred by the estate and entitled to administrative expense priority under § 503(b)(1)(B).  These obligations will continue to accrue until the [Chapter 7] Trustee has liquidated all of Sunnyside's assets and submitted his final report."); *Adventure Res. Inc. v. Holland (In re Adventure Res. Inc.)*, 137 F.3d 786, 795 (4th Cir. 1998) (Coal Act premium obligations entitled to "administrative expense priority as taxes incurred by the estates" to the extent they became payable during bankruptcy).[9]

34.     In determining that Coal Act premium obligations constitute taxes, each of these courts applied the *Lorber* test, which ascribes four essential attributes to taxes:   (1) an involuntary pecuniary burden, regardless of name, laid upon individuals or property; (2) imposed by, or under authority of the legislature; (3) for public purposes, including the purposes of defraying expenses of government or undertaking authorized by it; and (4) under the police or taxing power of the state.   *See, e.g., Olde Fla. Invs. Ltd. v. Port of the Islands Cmty. Improvement Dist. (In re Olde Fla. Invs., Ltd.)*, 293 B.R. 531, 542 (Bankr. M.D. Fla. 2003) (citing *County Sanitation Dist. No. 2 of Los Angeles v. Lorber Indus. of Cal., Inc. (In re Lorber Indus. of Cal., Inc.)*, 675 F.2d 1062, 1066 (9th Cir. 1982)).  The *Sunnyside, Adventure Resources*, and *LTV* courts found that Coal Act premium obligations bear each of these attributes and accordingly constitute taxes.  *Sunnyside*, 146 F.3d at 1278 ("The undeniably involuntary nature of these assessments as crafted by the Coal Act to directly remediate continuing crises in the nation's production of coal qualifies them as taxes.  We thus join the Second and Fourth Circuits

---

[9] In addition to the Second, Fourth, and Tenth Circuit Courts of Appeals, the Third Circuit Court of Appeals has also held that Coal Act obligations constitute taxes – though it did not address specifically how and when these taxes arise.  *Unity Real Estate Co. v. Hudson*, 178 F.3d 649, 675 (3d Cir. 1999) ("[W]e, along with other Courts of Appeals, have held that Coal Act obligations are taxes.") (citing *Lindsey Coal Mining Co. v. Chater*, 90 F.3d 688, 695 (3d Cir. 1996) ("[T]he character of the statute does not entail a physical invasion of property but assesses what is essentially a tax to continue a benefits program.")).

and hold the premiums are taxes."); *Adventure Resources*, 137 F.3d at 794 (Coal Act "obligations are involuntary pecuniary burdens imposed by Congress for the public purpose of restoring financial stability to coal miners' benefit plans") (quoting *In re Leckie Smokeless Coal Co.,* 99 F.3d 573, 583 (4th Cir. 1996)); *LTV*, 53 F.3d at 498 ("The Coal Act obligations are appropriately described as 'taxes' due to their overwhelmingly involuntary nature, their explicitly stated public purpose, and their obvious potential to be imposed pursuant to the taxing power.") (internal quotations omitted).

35.     As these courts determined, Coal Act premiums bear each of the *Lorber* attributes.  First, Coal Act premiums are unquestionably "involuntary pecuniary burdens," as Plaintiff's resistance to paying them evidences.  Second, they were "imposed by, or under the authority of the legislature" – that is, Congress, which enacted the Coal Act.  Third, Coal Act premiums exist for the public purpose of alleviating significant labor discord in the coal industry and ensuring that health benefits promised to coal miners will be honored.  *See generally LTV*, 53 F.3d at 480-84 (describing the history of labor strife and financial distress of miners' benefit funds the Coal Act was designed to address).  And fourth, these premiums are enforced through the police and taxing powers of the state.  *See*, *e.g.*, 26 U.S.C. § 9707 (authorizing Secretary of Treasury to impose penalties on entities that fail to meet their Coal Act obligations); *LTV*, 53 F.3d at 498 ("The placement of the Coal Act at Subtitle J of the Internal Revenue Code of 1986 provides a strong indication of Congress's intent, as does its granting of enforcement powers to the Secretary of the Treasury.").

36.     Plaintiff, in an effort to collapse its current premium obligations back to some pre-Effective Date point, contends that "the UMWA Trustees' first right to payments . . . arose upon the enactment of the Coal Act on October 24, 1992," and that because this enactment antedated

13

the Confirmation Order, all subsequent claims for the payment of Coal Act premiums were

discharged thereby.  Complaint ¶¶ 27, 28.  This argument is squarely contradicted by applicable

precedent.  In *Sunnyside*, for example, the Tenth Circuit Court of Appeals addressed and rejected

this "relation back to enactment" theory in evaluating whether Coal Act premium claims were

entitled to administrative expense priority:

> Only taxes "incurred by the estate" are administrative expenses entitled to first
> priority under § 507(a)(1).  However, until the petition is filed, there can be no
> estate; hence first priority for tax claims extends only to postpetition taxes.
> Although the Bankruptcy Code does not define the term "incurred," the Circuits
> addressing the issue have uniformly held a tax is incurred when it accrues.  Thus,
> for the 1992 Plan's claims to be incurred by the estate, they had to accrue after
> Sunnyside filed its petition for relief.
>
> The [Chapter 7] Trustee contends, however, any postpetition claim the Claimant
> may have must *relate back to a "single, unitary, prepetition obligation"* arising
> from collective bargaining agreements between Sunnyside and the UMWA and
> *the prepetition enactment of the Coal Act*.  Thus, any claims for taxes incurred
> prepetition but arising after the petition is filed must be treated as if the claim
> arose before the filing of the petition . . . .
>
> Again, these arguments not only ignore the Coal Act but attempt to override its
> provisions with those of the Bankruptcy Code when, in fact, the two statutory
> schemes may be harmoniously construed. . . .  *[T]he premiums accrue whether or
> not the coal company remains in the coal or any related business; and these
> obligations clearly accrue postpetition.*

*Sunnyside*, 146 F.3d at 1278-79 (emphasis added).

37.     The recurrently arising character of Coal Act premium obligations is, of course,

consistent with the nature of taxes generally, which is why companies that have received a

bankruptcy discharge must continue paying taxes on an ongoing basis post-emergence.   *See*,

*e.g.*, *In re Anchor Glass Container Corp.*, 375 B.R. 683, 688 (Bankr. M.D. Fla. 2007) (a tax is

"incurred" as soon as the debtor is necessarily liable to pay it) (citing *Baer v. Bd. of Cty.*

*Comm'rs (In re Prairie Mining, Inc.)*, 194 B.R. 248, 258 (Bankr. D. Kan. 1996)); *see also id.* at

687 ("[M]ost courts considering the issue have found that a tax is incurred when it accrues and

becomes a fixed liability.") (collecting cases).  Where a statute prescribes that a tax corresponds to specified periods of time, a separate tax obligation accrues in each period.  *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1195 (11th Cir. 2011) ("Income taxes are levied on an annual basis.  Each year is the origin of a new liability and a separate cause of action.") (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948)); *see also In re Blue Coal Corp.*, 166 B.R. 816, 822 (Bankr. M.D. Pa. 1993) ("The relationship of taxpayer to tax recipient is such that the creditor-debtor relationship accrues on an annual basis rather than on some sort of open account.").  The Bankruptcy Code itself recognizes that tax liabilities are not incurred on the date the statute authorizing the tax is enacted.  11 U.S.C. § 547(a)(4) ("[A] debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension.") (governing the assertion of preference claims on behalf of the estate).

38.    The Unpaid Premium Claims that the Trustees seek to enforce in the D.C. Litigation arose, at the very earliest, when Combined Benefit Fund premiums for the year beginning October 25, 2015, were assessed on October 10 of that year – not, as Plaintiff contends, when the statute under which they were imposed was enacted.  Complaint Ex. C ¶ 27 (Plaintiff has "failed to pay the required premiums for months April 2016 through July 2016" for the 1992 Benefit Plan); *id.* ¶¶ 29, 32 (Plaintiff has "failed to pay the required installments for May 2016 through July 2016" on account of the Combined Benefit Fund premium assessed for the year beginning October 25, 2015).  Under the plain language of the Coal Act, and as affirmed by consistent circuit-level precedent, the Trustees' claims for these premiums cannot have been subject to Plaintiff's 1995 bankruptcy discharge because they arose after the discharge was entered.  *Sunnyside*, 146 F.3d at 1279 ("Coal Act premiums accrue for each tax period."); *LTV*, 53 F.3d at 498 ("The remainder of LTV's obligations was not dischargeable in bankruptcy and is

15

an obligation of the reorganized LTV.").

   iii.   **Construing the discharge to eliminate the Unpaid Premium Claims would exceed the Court's power.**

39.     Because Coal Act premium payment obligations are taxes, the federal Anti-Injunction Act ("AIA") limits federal courts' subject matter jurisdiction to grant relief from them.   The AIA provides, in relevant part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ."  26 U.S.C. § 7421(a).  The prohibition is broad:  it bars actions that would directly interfere with federal tax assessments and actions that ultimately would result in such interference.  *See Bob Jones Univ.*, 416 U.S. 725, 738-39 (1974); *U.S. v. Kaplowitz*, 201 Fed. App'x 659, 663 (11th Cir. 2006).

40.     Plaintiff claims that this Court's 1995 discharge injunction shields it from the Trustees' 2016 Coal Act Premium Claims.  *See*, *e.g.*, Complaint ¶ 51.  But challenges to federal tax assessments must be raised retrospectively in refund litigation, rather than prospectively via injunction or otherwise.  *Bob Jones*, 416 U.S. at 736 (AIA seeks to permit efficient collection "with a minimum of pre-enforcement judicial interference"); *Enax v. U.S.*, 243 Fed. App'x 449, 451 (11th Cir. 2007) ("Once a proper assessment has been made, the taxpayer's recourse is to pay the tax and bring a suit for refund.") (quoting *Hempel v. U.S.*, 14 F.3d 572, 573 n.3 (11th Cir. 1994)); *see also RYO Mach., LLC v. Dep't of Treasury*, 696 F.3d 467, 470 (6th Cir. 2012).  A court may not apply its equitable powers to enable taxpayers to evade jurisdictional statutes such as the AIA.  *Bowles v. Russell*, 551 U.S. 205, 211-14 (2007); *In re Am. Bicycle Ass'n*, 895 F.2d 1277, 1279 (9th Cir. 1990) ("[N]othing in the Bankruptcy Code or its legislative history indicates

that Congress intended to override the Anti-Injunction Act . . . .").[10]

41.    Accordingly, even if this Court had intended to discharge the Coal Act Premium Claims or bar their enforcement by entry of the Confirmation Order, this relief would have exceeded the Court's jurisdiction and would accordingly be invalid.

## B.    Plaintiff's Statutory Obligation to Provide an Individual Employer Plan for Orphaned Miners is Unaffected by Plaintiff's Bankruptcy Discharge

42.    In addition to payment of unpaid Coal Act premiums, the Trustees are also seeking a ruling in the D.C. Litigation compelling Plaintiff to establish and maintain an individual employer retiree health care plan ("IEP") for retirees who were covered by Walter Energy's IEP until Walter Energy terminated that IEP on April 1, 2016.  Complaint Ex. C ¶¶ 14, 19.  The Coal Act provides that any signatory operator and its related persons continue to provide an IEP for so long as any of them remains in business, whether in the coal industry or otherwise:

---

[10] The District Court for the Northern District of Alabama recently (and incorrectly) held that Coal Act premiums are not subject to the AIA under the Supreme Court's decision in *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012) ("*NFIB*").  *See UMWA Combined Benefit Fund v. Walter Energy, Inc. (In re Walter Energy, Inc.)*, No. 2-cv-57, 2016 U.S. Dist. LEXIS 65166 at **38-39 (N.D. Ala. May 8, 2016) (citing *UMWA Combined Benefit Fund v. Walter Energy, Inc. (In re Walter Energy, Inc.)*, No. 2-cv-64, 2016 U.S. Dist. LEXIS 14854 (N.D. Ala. Feb. 8, 2016)) (the "*Walter* AIA Decision").  The Trustees have appealed this ruling on the basis that the Alabama District Court misread both *NFIB* and the Coal Act.  *See* Appellants' Opening Brief, Case No. 16-13483 (11th Cir.).

The *Walter* AIA Decision was premised on the distinction drawn in *NFIB* between Affordable Care Act "taxes" covered by the AIA and "penalties" that were not.  2016 U.S. Dist. LEXIS 14854 at **7-8 ("Similarly, and applying *NFIB* here, the court concludes that, in the Coal Act context, Congress's characterization of the payments at issue as 'premiums,' not 'taxes,' is 'fatal to the application of the [AIA].'").  This decision incorrectly mapped the logic of *NFIB* onto the Coal Act.  In *NFIB*, the Supreme Court was interpreting a statute that expressly used the words "taxes" and "penalties" for different purposes, a semantic variation that reflected a deliberate congressional intent *not* to treat the latter as taxes:  ACA "taxes" were designed to raise revenue to fund ACA benefits, whereas "penalties" existed for the purpose of promoting individual behavior, namely the acquisition of health insurance.  *NFIB*, 132 S. Ct. at 2582-84.  The *Walter* AIA Decision neglected the fact that, unlike the ACA, the Coal Act refers only to "premiums" and "penalties," so the statutory text does not reflect an imperative that premiums be treated differently from taxes, under the AIA or otherwise.  To the contrary, "premiums" under the Coal Act, whose purpose is to fund congressionally mandated health benefits, should be treated *exactly* like taxes under the ACA – and subjected accordingly to the AIA.

(a) The last signatory operator of any individual who, as of February 1, 1993, is receiving retiree health benefits from an individual employer plan maintained pursuant to a 1978 or subsequent coal wage agreement shall continue to provide health benefits coverage to such individual and the individual's eligible beneficiaries which is substantially the same as (and subject to all the limitations of) the coverage provided by such plan as of January 1, 1992. *Such coverage shall continue to be provided for as long as the last signatory operator (and any related person) remains in business.*

[. . .]

(c)(1) [E]ach related person of a last signatory operator . . . shall be jointly and severally liable with the last signatory operator for the provision of health care coverage described in subsection (a) . . . .

26 U.S.C. § 9711(a), (c)(1) (emphasis added); *see also* 26 U.S.C. § 9701(c)(7) ("For purposes of this chapter, a person shall be considered to be in business if such person conducts or derives revenue from any business activity, *whether or not in the coal industry.*") (emphasis added).

43.     The requirement that signatory operators and their related persons maintain an IEP is a statutory obligation that federal law imposes on Plaintiff as a cost of doing business. Like other types of federal requirements imposed on businesses, such as safety and environmental compliance requirements, this obligation is not a "claim" and cannot be "discharged" in bankruptcy. *See*, *e.g.*, *Ohio v. Kovacs*, 469 U.S. 274, 284-5 (1985) (former debtor, whose prepetition monetary environmental cleanup liability had been discharged in bankruptcy, nonetheless "must comply with the environmental laws of the State of Ohio" post-discharge); *In re CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992) ("Having been a debtor in bankruptcy does not authorize a firm to operate a nuisance today . . . or otherwise excuse it from complying with laws of general application."); *see also Mark IV Indus. v. N.M. Env't Dep't (In re Mark IV Indus.)*, 459 B.R. 173, 188 (S.D.N.Y. 2011) (an equitable decree to stop or remedy ongoing harm that cannot be converted to a money damages claim is not subject to discharge).

18

44.    Because Plaintiff's obligation to provide an IEP for the benefit of miners assigned to entities within its controlled group is an ongoing statutory requirement rather than a monetary claim, it was not and could not have been subject to Plaintiff's bankruptcy discharge.

## CONCLUSION

45.     Plaintiff mischaracterizes the nature of both its 1995 discharge and the law under which the Trustees have brought the D.C. Litigation in an effort to evade ongoing tax and other statutory obligations.  Plaintiff's discharge cannot, as a matter of law, have applied to Coal Act premium claims that arose in 2016.  Nor can the discharge be read to have affected Plaintiff's ongoing federal statutory obligations to maintain an individual employer plan for eligible retirees and their dependents.

46.     Because Plaintiff's claims fundamentally misconstrue the law, no amendment to the factual assertions in the Complaint can cure Plaintiff's failure to state a claim on which relief can be granted.  Accordingly, this action should be dismissed with prejudice.  *K.A. v. Waters*, 448 Fed. App'x. 7, 9 (11th Cir. 2011).


*[remainder of page intentionally blank]*

WHEREFORE, the Defendants request that the Court (i) enter an order dismissing this action with prejudice; and (ii) grant such other and further relief as the Court deems appropriate.

Dated: July 18, 2017

Respectfully submitted,

*/s/ Stephanie C. Lieb*
**TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.**
Stephanie C. Lieb
Florida Bar No. 31806
101 East Kennedy Boulevard
Suite 2700
Tampa, Florida 33602
Telephone:  (813) 223-7474
slieb@trenam.com

-and-

**MOONEY, GREEN, SAINDON, MURPHY & WELCH, PC**
Paul A. Green (*pro hac vice* admission pending)
John R. Mooney (*pro hac vice* admission pending)
1920 L Street, NW
Suite 400
Washington, DC 20036
Telephone:  (202) 783-0010
pgreen@mooneygreen.com
jmooney@mooneygreen.com

-and-

**MORGAN, LEWIS & BOCKIUS LLP**
John C. Goodchild, III (admitted *pro hac vice*)
Matthew C. Ziegler (admitted *pro hac vice*)
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone:  (212) 309-6000
john.goodchild@morganlewis.com
matthew.ziegler@morganlewis.com

*Counsel to the Trustees of the United Mine Workers of America 1992 Benefit Plan and the United Mine Workers of America Combined Benefit Fund*

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been electronically filed on July 18, 2017, with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following attorneys:

Scott A. Stichter, Esquire
STICHTER, RIEDEL, BLAIN & POSTLER, P.A.
110 E Madison Street, Suite 200
Tampa, FL 33602-4700
Tel: 813.229.0144
Fax:813.229.1811
Email: sstichter.ecf@srbp.com
*Attorney for Plaintiff*

*/s/ Stephanie C. Lieb*
Stephanie C. Lieb